Leipold *v.* Marony.

R. H. T. LEIPOLD *et al. v.* T. MARONY *et al.*

1. CORPORATION, FOREIGN. *Assets. Chancery court jurisdiction.* The assets in this State of a foreign corporation doing business in this State, become, from the date of its insolvency, a trust fund for the benefit of creditors, and the chancery court acquiring jurisdiction may administer the assets, and enjoin separate creditors from prosecuting independent suits against the trust property.

2. SAME. *Same. Commissioners of freedman bank.* The commissioners appointed under the act of Congress of the 20th of June, 1874, to take charge of the property and effects of the Freedman's Saving and Trust Company, dispose thereof, and distribute the proceeds among the creditors *pro rata*, have such a title and interest in the property as will entitle them to file a bill in equity to execute the trust.

FROM SHELBY.

Appeal from the Chancery Court at Memphis. R. J. MORGAN, Ch.

W. M. RANDOLPH for complainants.

HARRIS & TURLEY for defendants.

COOPER, J., delivered the opinion of the court.

The chancellor sustained a motion to dismiss this bill, and the complainants appealed.

On March 3, 1865, a body corporate was established by act of Congress of the United States under the name and style of the Freedmen's Saving and Trust Company, having its principal place of business in Washington City, in the District of Columbia, with power to establish branch agencies for the conduct of

its business in the several States of the Union. The corporation was in the nature of a savings and trust company for the benefit of the freedmen in the Southern States. The company organized, and established agencies in several States, and among others an agency in the State of Tennessee at Memphis, receiving on deposit moneys of freedmen, and investing the same for their use and benefit. In the conduct of the business the company, through this agency, incurred debts and liabilities to a large amount, perhaps nearly to the sum of $100,000, due to as many as or more than seventy-five persons. In the year 1874, the company became "greatly insolvent," and so continues to this day. In view of this fact, and in order to administer its assets as insolvent, the Congress of the United States, on the 20th of June, 1874, passed an act providing for the appointment of commissioners to possess the assets, convert them into money, and distribute the proceeds among the creditors of the company ratably, the creditors residing in several States and amounting in number to several thousand. By virtue of this act, the complainants became the commissioners, and the title and right of possession of the assets became vested in them. Upon their appointment, they set about to possess, collect and convert the assets into money, and generally and faithfully to perform the duties incumbent upon them. They have collected a large sum of money, and have made and paid out to the creditors a dividend of twenty per cent., and are preparing to make further dividends. Recently certain persons named, four in number, claim-

9—VOL. 7.

ing to be creditors of the company, have instituted suits by original attachment in the circuit court of Shelby county, and have caused the property and assets of said company to be seized by writs of attachment, with intent to subject the same to the satisfaction of their demands. One of these creditors is a non-resident of the State, and the residences of two others are unknown to complainant. Three of these attachment suits were commenced in June, 1875, the date of the fourth not appearing.

This bill was filed on the 21st of September, 1876, by the commissioners against the four attaching creditors, and "all other persons having an interest in the application of the assets and property of the company, whether as creditors or otherwise," setting out the foregoing facts, and asking that the assets and property of the Memphis agency be administered and distributed in chancery according to the rights and equities of the several parties. The bill asked and obtained an injunction against the further prosecution of the attachment suits. The motion to dismiss purports to be made by the defendants, presumably the attaching creditors, and is for want of equity on the face of the bill. The chancellor sustained the motion upon the ground that the complainants have no interest in the property of the Freedmen's Savings and Trust Company. The argument in support of the decree is principally rested on the same ground.

The act of Congress incorporating the Freedmen's Savings and Trust Company, constituted it a corporation "in the District of Columbia." No question is

Leipold *v.* Marony.

made as to the power of Congress to create such a corporation, or as to the right of the corporation, when created, to transact business by means of an agency in this State, the business being lawful and laudable. It is the settled law of this State that the assets of an insolvent moneyed corporation, under our statutes and decisions, become, from the date of insolvency, a trust fund for the benefit of creditors in the order prescribed by law, or otherwise *pro rata:* *Comfort* v. *Patterson*, 2 Lea, 672. The rule applies to the property of a foreign corporation doing business in this State, and the chancery court, acquiring jurisdiction, may administer the assets and enjoin separate creditors from prosecuting independent suits against the common trust assets: *Smith* v. *St. Louis Mutual Life Ins. and Tr. Co.*, 3 Tenn. Ch., 502, affirmed by this court at Nashville, 1880. And even a recovery in a separate suit will not give the creditor a preference: *Marr* v. *Bank of West Tennessee*, 4 Cold., 471. The bill alleges that the insolvency of the company in this case occurred in 1874, and three of the attachment suits are alleged to have been commenced in June, 1875, and the remaining suit is charged to have been instituted "recently" before the filing of the bill. It is clear, therefore, that the bill does contain equity if the complainants are entitled to file it. The bill alleges that one of the attaching creditors made defendant has received from the complainants the dividend of twenty per cent. made by them, and he is probably estopped to dispute their title.

The act of Congress of the 20th of June, 1874,

by virtue of which, according to the bill, the complainants claim their authority as commissioners, was passed with a double object—first, to modify the mode of conducting the business of the branches of the company, and, secondly, to enable the corporation to wind up its affairs if deemed advisable.   By the 7th section of that act it is provided, that, whenever deemed advisable by the trustees of the company to close up its entire business, they shall select three competent men, not connected with the previous management of the institution, and approved by the secretary of the treasury, to be known and styled commissioners, whose duty it shall be to take charge of all the property and effects of said Freedmen's Savings and Trust Company, close up the principal and subordinate branches, collect from the branches all the deposits they have on hand, and proceed to collect all sums due to said company, and dispose of all the property owned by said company as speedily as the interests of the corporation may require, and distribute the proceeds among the creditors *pro rata,* according to their respective amounts.   After providing for the commissioners giving bond with good security before acting, this section adds: "And whenever said trustees shall file with the secretary of the treasury a certified copy of the order appointing said commissioners, and they shall have executed bonds and taken the oath as aforesaid, then said commissioners shall be invested with the legal title to all of said property of said company, for the purposes of this act, and shall have full power and authority to sell the same, and make deeds of convey-

Leipold *v.* Marony.

ance to any and all of the real estate sold by them to the purchasers."

The language of the bill fairly implies that the complainants have been appointed and qualified under this section as commissioners, and that they have "set about to possess, collect and convert the assets." No reason occurs, nor has any been suggested, why the method provided by the act of Congress, assented to and pursued by the trustees of the company, as its governing board, should not operate as a statutory conveyance of the property for the benefit of creditors: *Miller* v. *Lancaster*, 5 Cold., 514. It would certainly authorize the commissioners to take possession and control of the property of the corporation, and administer it for the benefit of the creditors in and through a court of equity. And this is enough for the purposes of this bill. Whether the title thus acquired would, without registration, prevail against a creditor asserting his legal right, is another question. But even after the legal right is asserted, as we have seen, the persons in control, or having the right to control the corporate property would be trustees for the creditors, and might come into equity to enforce the trust.

Reverse the decree, and remand for further proceedings. The appellees will pay the costs of this court.